UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| RICHARD CHOWNING,<br><br>Plaintiff,<br><br>vs.<br><br>NATIONWIDE INSURANCE COMPANY OF AMERICA; ALLIED INSURANCE COMPANY OF AMERICA; NATIONWIDE ARGIBUSINESS INSURANCE COMPANY; TITAN INSURANCE COMPANY INC.; VICTORIA FIRE & CASUALTY COMPANY and DOES I - V, and ROE CORPORATIONS I - V, inclusive,<br><br>Defendants. | CASE No: 2:22-cv-00798-CDS-EJY<br><br>**ORDER** |

Pending before the Court is Defendants' Motion for Leave to Amend Their Answers to the First Amended Complaint. ECF No. 91. Also Pending is Plaintiff's Motion for Leave to File Supplement to Response to Defendants' Motion for Leave to Amend Answer. ECF No. 106. The Court considered the Motions, respective Responses, and respective Replies.

**I.    Relevant Background**

Plaintiff filed his Complaint in this action in the Eighth Judicial District Court for Clark County, Nevada in April 2022.[1] ECF No. 1 at 10. Defendants removed the action in May 2022. *Id*. at 1. An Amended Complaint was filed on August 17, 2022 (ECF No. 25), and is the operative complaint in this action at this time. The issue presented is whether Defendants' Answers to the Amended Complaint may be amended to include an affirmative defense titled: "Failure to Cooperate." ECF No. 91 at 9. Defendants request no other amendments to their Answers.

Defendants contend there is good cause for the amendment because they did not discover the basis for the amended affirmative defense until "mid-February 2023." *Id*. at 11. It was at that time Defendants say they first learned that the entire insurance claims file disclosed in this action was

---

[1] Underlying this action was a dispute filed by Deeanna Parks ("Parks") in the Eighth Judicial District Court. Parks was a passenger on a motorcycle owned by Richard Chowning—Plaintiff in this action—and insured, according to Defendants, by Depositors Insurance Company. The Court references Defendants collectively in this action because there has been no determination that Depositors is the only proper defendant herein.

given to Plaintiff's rebuttal expert Kimball Jones ("Jones"). *Id*. Defendants argue the claims file contains documents protected by "the tripartite" attorney client privilege that exists between and among Plaintiff's counsel, Defendants, and Defendants' counsel. *Id*. at 7. In sum, Defendants say that Plaintiff's disclosure of the privileged information to his rebuttal expert violated the cooperation clause in the policy under which Plaintiff was insured. That clause is quoted by Defendants as requiring Plaintiff to "assist us and, if applicable, the defense counsel chosen for you by us, with any claim or suit…. [and] provide … cooperation to us during any claim or suit for the investigation, settlement or defense of that claim or suit." *Id*. at 9 *citing* ECF No. 18-6 at 19.[2] Defendants go on to quote the "General Provisions" of the policy as stating: "We, you, and anyone insured by this policy must do certain things in order for the provisions of the policy to apply. The following are policy conditions: … (8) Legal Action Limitations: No legal action may be brought against the company concerning any of the coverages provided in this policy until the insured has fully complied with all the terms of the policy." *Id*. *citing id*. at 21. Defendants argue they meet the standard applicable to Federal Rule of Civil Procedure 15 because they were diligent in bringing the Motion to Amend, there is no bad faith, there is an absence of delay, there is no prejudice to Plaintiff, and the amendment is not futile. *Id*. at 12-17.

When boiled down to its essence, Plaintiff argues in response that Defendants delayed their filing, the cooperation clause is inapplicable to the facts presented by Defendants, and the proposed amendment is futile. ECF No. 94. That is, Plaintiff contends he shared information with his rebuttal expert (not the public), Defendants identified no limiting designation on the claims file it produced to him, Defendants did not indicate there was anything produced by them in this case that Plaintiff was precluded from providing to his expert, there is no evidence of a request for cooperation of any kind that Plaintiff failed to provide, Defendants suffered no prejudice arising from disclosure of the claims file to Plaintiff's expert (let alone substantial prejudice as a result of the disclosure), and Plaintiff will suffer substantial prejudice if the amendment requested is permitted. *Id*., *generally*.

Defendants' Reply initially focuses on Plaintiff's "waiver" of the attorney client privilege without Defendants' agreement to do so. ECF No. 97. This argument was not raised in Defendants'

---

[2] Counsel is reminded to use ECF, not "Doc" when referencing docket filings.

2

moving papers. *See* ECF No. 91. Defendants say there is no implied waiver by virtue of the production of the claims file to Plaintiff, and that Plaintiff could not make the file "public" simply based on Defendants' production. *Id*. at 3-4. Defendants also argue collusion (which they mention in their moving papers as well), and more than once contend that Plaintiff has somehow obstructed their defense. ECF Nos. 91 at 8, 12; 97 at 9. Nowhere do Defendants offer any facts to support obstruction. *Id*. Defendants turn to futility and discuss the limitations of case law interpreting NRS 485.3091.5(a) that does not reach "excess of additional coverage … not covered" by the statute.[3] ECF No. 97 at 10. Defendants state that "[w]hile the statute might make … [them] liable to indemnify … [Plaintiff] up to the statutory minimum amount of liability coverage, it does not preclude … [Defendants] from disclaiming liability beyond that amount based on his violation of the [p]olicy's cooperation clause." *Id*. relying on *Torres v. Nev. Direct Ins. Co.*, 353 P.3d 1203, 1207-08 (Nev. 2015) ("we hold that no post-injury violation of a policy will release the insurer under the absolute-liability provision" and "absolute-liability statutes are interpreted to require payment of the minimum statutorily required insurance benefits, if the law required the policy to be in place, even if the insured has breached the insurance contract or made misrepresentations in the insurance application.") (internal citations omitted).

With respect to prejudice, Defendants say that their proposed amended answer begins with the conclusory statement that they have "been prejudiced by … [Plaintiff's] breach of [his] contractual duties." ECF No. 97 at 11 *citing* ECF No. 91-12 at 14 ¶ 92 (second brackets in original). Defendants contends the "[C]ourt must accept" this pleading as true. *Id*. at 11. Of course, accepting a pleading as true presumes the pleading is filed and presumes what is asserted is fact, not a legal conclusion. Defendants next argue that Nevada law does not require them to show any prejudice arising from Plaintiff's alleged non-cooperation. *Id*. Defendants closes out their Reply contending their Motion was not limited to the disclosure of attorney client communications to Plaintiff's expert, but is broader—that is, the alleged "collusion since" the beginning of the underlying action in state court. *Id*. at 12.

---

[3] Defendants are reminded that they are in federal court which requires "[w]hen a decision of a state appellate court has been reported in the West's National Reporter System, that citation must be given." LR IA 7-3(b).

## II. Discussion

### a. The Standard Applicable to a Motion to Amend an Answer.

The standard for leave to amend a complaint under Rule 15 of the Federal Rules of Civil Procedure applies equally to a request for leave to amend an answer. *Lopez v. Swift*, Case No. 12-CV-5099-TOR, 2014 WL 2957459, at *4 (E.D. Wash. July 1, 2014). Courts consider five factors in deciding whether to do so: (1) bad faith, (2) undue delay, (3) prejudice to the opposing party, (4) futility of amendment, and (5) whether the pleading has previously been amended. *See, e.g.*, *United States v. Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011). Prejudice is given the greatest weight. *Eminence Capital, LLC, v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (describing prejudice as the "touchstone of the inquiry"). Nevertheless, well settled law holds leave to amend "shall be freely given when justice so requires." *Carvalho v. Equifax Services, LLC*, 629 F.3d 876, 892 (9th Cir. 2010). In fact, leave to amend is "to be applied with extreme liberality." *Eminence Capital, LLC*, 316 F.3d at 1051-52.

However, when a pleading amendment is sought after the scheduling order deadline to file motions to amend the pleadings, the moving party "must first make a showing of good faith under Rule 16(b) before … [the C]ourt analyzes the motion under Rule 15(a)." *United States v. Boyce*, 148 F. Supp. 2d 1069, 1077-78 (S.D. Cal. 2001), *aff'd*, 36 Fed. Appx. 612 (9th Cir. 2002). "'If the court considered only Rule 15(a) without regard to Rule 16(b), it would render scheduling orders meaningless and effectively would read Rule 16(b) and its good cause requirement out of the Federal Rules of Civil Procedure.'" *Id.* (internal brackets omitted) (quoting *Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1419 (11th Cir. 1998)) (citing *Jackson v. Laureate, Inc.*, 186 F.R.D. 605, 607 (E.D. Cal. 1999)).

Rule 16(b)'s "good cause standard primarily considers the diligence of the party seeking the amendment." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1991) (internal quote marks omitted). Thus, the "party seeking modification must first show good cause for amendment under Rule 16, then if good cause is shown, the party must demonstrate that amendment is proper pursuant to Rule 15." *Kowalski v. Anova Food, LLC*, Case No. CIV. 11-00795 HG-RLP,

2015 WL 1119450, at *1 (D. Haw. Feb. 12, 2015) (citing *Finjan, Inc. v. Blue Coat Sys., Inc.*, Case No. 13-cv-03999-BLF, 2014 WL 6626227, at *2 (N.D. Cal. Nov. 20, 2014)).

Further, in the U.S. District Court for the District of Nevada, "[a] request made after the expiration of the specified period will not be granted unless the movant or attorney demonstrates that the failure to file the motion before the deadline expired was the result of excusable neglect." LR IA 6-1(a). When considering whether Plaintiff demonstrates excusable neglect here, the Court examines four factors: "(1) danger of prejudice to the opposing party; (2) length of delay and its potential impact on the proceedings; (3) reason for the delay; and (4) whether the movant acted in good faith." *Lemoge v. United States*, 587 F.3d 1188, 1192 (9th Cir. 2009) (internal citation and quotation marks omitted); *Pioneer Investment Services Company v. Brunswick Associates Limited Partnership*, 507 U.S. 380, 395 (1993).

The last day to amend pleadings or add parties in this action was August 17, 2022. ECF No. 14 at 2. *See* ECF No. 34, 78, 104-05, 112. The instant Motion was filed seven months later on March 16, 2023. ECF No. 91.

b.  <u>Defendants Demonstrate the Diligence Necessary to Establish Good Cause Under Rule 16(b)</u>.

Good cause is all about diligence. As stated in *Johnson*,

> carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief. *Cf. Engleson v. Burlington Northern R.R. Co.*, 972 F.2d 1038, 1043 (9th Cir. 1992) (carelessness not a ground for relief under Rule 60(b)); *Martella v. Marine Cooks & Stewards Union*, 448 F.2d 729, 730 (9th Cir. 1971) (same), *cert. denied*, 405 U.S. 974 … (1972); *Smith v. Stone*, 308 F.2d 15, 18 (9th Cir. 1962) (same). Although the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking modification. *See Gestetner Corp. v. Case Equip. Co.*, 108 F.R.D. 138, 141 (D. Me. 1985). If that party was not diligent, the inquiry should end.

*Johnson,* 975 F.2d at 609.

Defendants assert they meet the good cause standard because it was not until February 11, 2023 that they received Plaintiff's twelfth supplemental Rule 26 disclosure including the 32 page supplemental expert report from Plaintiff's expert (Jones) revealing disclosure of the entire claims file including attorney client privileged communication. Here, it is important to note that Jones was counsel for Parks—the woman who was riding on Plaintiff's motorcycle in February 2015 and was

5

injured upon a crash of that motorcycle—who sued Plaintiff in state court and ultimately prevailed winning damages in excess of $8 million. ECF No. 91 at 4, 5, 7.

Defendants say that before receiving Jones' supplemental report they had no knowledge that attorney client communications had been shared by Plaintiff with Jones. *Id*. at 12. Defendants point out that the instant Motion to Amend was filed 35 days after their discovery of the disclosure. Defendants also point to the opening sentences of Jones' supplemental report that they say begins by thanking Plaintiff's counsel for a copy of the claims file. In toto, the commencement of the supplemental report states the claims file provided:

> additional context and supports the opinions … [the expert] previously offered. These documents further demonstrate that Nationwide's expert report cannot be relied on for an accurate history. Nationwide's report includes logical inconsistencies, cherry picked evidence, and omissions of relevant information, often taking the record and evidence out of context.

ECF No. 91-10 at 2.

Plaintiff did not file the supplemental report—which Defendants says discloses attorney client communications—on the publicly available docket. It is Defendants who did so without redacting or seeking to seal what they contend is privileged communications. ECF No. 91-10. Defendants also discuss and submitted to the docket in the case an unredacted copy of a motion filed by Jones in state court in which Jones sought reconsideration of the denial of an attorney's fees award. ECF No. 91 at 8 *citing* ECF No. 91-11 at 7-10, 13-15.[4] Before Defendants filed the rebuttal expert report and state court motion on the docket, there is no record of the complained of communications being available to the public through this action.

Plaintiff responds claiming Defendants have known that Jones would serve as an expert in this matter since October 17, 2022. ECF No. 94 at 2. Plaintiff says Defendants disclosed the claims file on October 31, 2022, which is after learning of Jones' role as an expert and despite knowing Jones was Parks' counsel in the state court action. Plaintiff repeats throughout his opposition to the Motion to Amend that there was no request by Defendants to maintain confidentiality of any portion of the claims file. Defendants offer no evidence to the contrary.

On March 17, 2023, Plaintiff's counsel asked Defense Counsel to:

---

[4] An appeal of the denial of attorney's fees was withdrawn by Parks. *See* ECF No. 106-2 at 2.

6

> advise … if there are any pleadings, documents, and/or other tangible items which you and/or your client believe … [Plaintiff] should not disclose to Parks' counsel (or to anyone else for that matter) … [; and [p]lease … provide me with any prior communications … wherein you and/or your client advised me and/or … [Plaintiff] that it had any issue with … disclosing any pleadings, documents, and/or other tangible items to anyone (other than those identified in the protective order of course).

ECF No. 94-2 at 2. Defendants responded, in pertinent part:

> My client has been communicating with your client either directly or through you about the underlying action since 2016. Your client has had a contractual obligation to cooperate with Depositors' defense of the underlying action from the very outset, and Depositors advised him of that obligation. … With respect to the information … you have requested in your email, there is simply no procedural rule by which you can compel my clients … to provide you with such information and then use any response or non-response to that email as any sort of "admission" as you claim.

*Id.* at 1.

Plaintiff further argues that the claims file was not produced by Defendants in accordance with a confidentiality or protective order to which the parties agreed and no request was made to maintain the confidentiality of the documents. Plaintiff says that (1) Defendants did not address the disclosure prior to filing their Motion for Leave to Amend, and (2) Plaintiff had no role in Jones' decision to file a motion on behalf of Parks in state court. A Stipulated Protective Order was entered by the Court on January 24, 2023. ECF No. 75. The Protective Order states that "[i]f timely corrected, an inadvertent failure to designate qualified information or items does not, standing alone, waive the Designating Party's right to secure protection under this Order for such material." *Id.* at 6.

Setting aside arguments that go to the merits of Defendants' proposed affirmative defense, there appears no dispute that until the supplemental report was issued by Jones and reviewed by Defendants in late February 2023, Defendants did not know that Jones was in possession of the entire claims file including documents at least a portion of which appear to include privileged communications.[5] Plaintiff provides nothing other than the argument that Defendants should have

---

[5] The Court reviewed ECF No. 91-10 at 4, 6, 24, and 33. The Court finds not all of these communications appear to fall within the definition of an attorney client privileged communication. Just because "a person is a lawyer does not, *ipso facto*, make all communications with that person privileged." *U.S. v. Chen*, 99 F.3d 1495, 1501 (9th Cir. 1996). Only those communications pertinent to the seeking or providing legal advice are privileged. *U.S. v. Martin*, 278 F.3d 988, 999-1000 (9th Cir. 2002). Page 4 contains an exchange between Defendants and outside counsel for Defendants that references attorney strategy and recommendations. Page 6 is an exchange between Defendants and defense counsel asking if defense counsel is "back to reality," and when a response is required, to which defense counsel responds he is

7

known all documents received would have been disclosed. That Defendants did not mark the claims file confidential may be, in part, explained by the fact that the Stipulated Protective Order was not presented to and granted by the Court until two months after the disclosure. Defendants did not subsequently attempt to identify materials in the claims file as confidential, but this does not change the fact that upon learning of the disclosure, Defendants promptly filed their instant Motion.

In sum, the time between production of Jones' supplemental report in which the disclosure of attorney client communications was discovered and the filing of the Motion to Amend was a relatively short period of time (35 days). This demonstrates reasonable diligence and, thus, meets the good cause standard under Rule 16(b).

c. <u>Excusable Neglect</u>

Neither Plaintiff nor Defendants discuss excusable neglect as it applies to Defendants' instant Motion that was filed months after the last day for amendment had lapsed. ECF No. 14 at 2 *compare* ECF No. 91. The parties only debate "good cause" and whether Defendants were delayed. Nonetheless, because Plaintiff does not oppose Defendants' Motion based on the failure to address excusable neglect, the Court treats the prejudice, delay, and good faith arguments made as equally applicable to this standard. And, given the overlap with Rule 15, the Court discusses these issues only once. In contrast, futility (a Rule 15 consideration only) would obviate the need to discuss any other elements under Rule 15 or excusable neglect. Thus, the Court turns to this issue first.

d. <u>Futility of Defendants' Proposed Amended Affirmative Defense</u>.

Futility is decided under Federal Rule of Civil Procedure 12(b)(6) that is applicable to motions to dismiss. *Hines v. Washington Federal Bank*, Case No. 2:21-cv-01621-APG-DJA, 2022

---

back, going to watch trial video, responses are needed in a "reasonable time," and if Defendants would forward "the letter," counsel will provide his "initial thoughts." Page 24 asks for a status report from counsel. Page 33 is Jones' expert opinion. Based on the review of these pages, the Court finds the communications on pages 24 and 33 do not support an application of attorney client privilege. The communications on pages 4 and 6 of ECF No. 91-10, that are privileged, occurred in 2022.

With respect to Defendants' reference to the motion for reconsideration filed by Jones in the state trial court (ECF No. 91 at 8 referencing ECF No. 91-11), pages 7 and 8 state that Plaintiff was at fault for the underlying accident, which is an undisputed fact and not, on its face, a privilege communication. Page 9 states an answer has been filed and Parks had 30 days to seek an exemption from a mandatory arbitration program adopted in the state court. This too does not, on its face, appear to qualify as a privileged communication. In contrast, pages 10 and 15 provide counsel's assessment of expert testimony that was not helpful to the defense, and pages 13 and 14 provide defense counsel's assessment of likely damages awarded to Parks. The communications on these pages are privileged.

8

WL 60878, at *1 (D. Nev. Jan 6, 2022) ("To determine futility, the Court applies the same standard used on a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)"), *citing Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1998); *see also Warren v. Nevada Dep't of Corrections*, Case No. 3:17-cv-00228-MMD-WGC, 2019 WL 11093580, at *1 (D. Nev. Sept. 5, 2019) ("The standard for futility is whether the proposed amended complaint states a claim upon which relief may be granted, ... the same standard that is utilized in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).").

"[I]f no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense," a proposed amendment is futile. *Miller*, 845 F.2d at 214. Although futility alone can justify denying a motion for leave to amend (*Nunes v. Ashcroft*, 375 F.3d 805, 808 (9th Cir. 2004)), "denial on this ground is rare and courts generally defer consideration of challenges to the merits of a proposed amended pleading until after leave to amend is granted and the amended pleading is filed." *Cates v. Stroud*, Case No. 2:17-cv-01080-GMN-PAL, 2017 WL 11429893, at *2 (D. Nev. Oct. 26, 2017) (internal citations omitted).

A thorough review of case law calls into question whether Defendants can state a breach of the cooperation clause based on Plaintiff's disclosure of the claims file to his retained rebuttal expert when that fact is applied to the requirement that Plaintiff—the insured—provided assistance "with any claim or suit" or "cooperation to" the insurer "during any claim or suit for the investigation, settlement or defense of that claim or suit." In *Schalk v. Infinity Insurance Company*, Case No. 3:20-cv-00615-YY, 2021 WL 1877976, at *4 (D. Ore. Apr. 21, 2016), the court stated:

> State and federal courts across the country have recognized that "[t]o deny liability coverage under" a cooperation clause, "an insurer must prove ... a material breach." *Heubel Materials Handling Co. v. Universal Underwriters Ins. Co.*, 704 F.3d 558, 563 (8th Cir. 2013); *see, e.g., Tran v. State Farm Fire & Cas. Co.*, 136 Wash. 2d 214, 232 (1998) ("[A]n insurance company should not have license to burden an insured with demands for items that are immaterial."); *Wood v. Allstate Ins. Co.*, 21 F.3d 741, 745 (7th Cir. 1994) (holding cooperation clauses are designed to "'enable the [insurance] company to possess itself of all knowledge, and all information as to other sources of knowledge, in regard to facts, *material to their rights*, to enable them to decide upon their obligations, and to protect them against false claims'") (emphasis added); *Barbian v. Cooper*, 32 Ohio Misc. 59, 62 (1972) ("Generally speaking, to constitute a breach of the cooperation provision of the insurance contract, there must be a lack of cooperation by the assured in some material and substantial respect."); *Juvland v. Plaisance*, 255 Minn. 262, 268 (1959) ("[T]he breach of a cooperation clause in a liability insurance policy must be in some

9

> material or substantial respect. It is not sufficient for the defendant to allege that plaintiff failed to cooperate without ... showing that the assured failed in some substantial or material particular or particulars to cooperate with and to assist the insurer in the defense of the action for damages covered by the policy."); *Bradford v. Com. Cas. Co.*, 10 N.J. Misc. 301, 306-07 (1932) ("Failure to co-operate in some inconsequential or immaterial matter cannot be set up as a defense, nor can it hardly be a ground for a defense where an insured makes an honest mistake."). … Information is material when it "pertain[s] to a subject that was 'relevant and germane to the insurer's investigation as it was then proceeding.'" *Callaway v. Sublimity Ins. Co.*, 123 Or. App. 18, 23 (1993) (quoting *Fine v. Bellefonte Underwriters Ins. Co.*, 725 F.2d 179, 183 (2d Cir. 1984)); *see also Tran*, 136 Wash. 2d at 224 (same).

In one context, the U.S. District Court for the Northern District of California interpreted California law as defining information as "material" relating "to matters reasonably relevant to the [insurer's] investigation" of a claim and "determination of its obligations under the policy." *Ram v. Infinity Select Ins.*, 807 F.Supp.2d 843, 853 (N.D. Cal. 2011). The leading case on materiality out of California states that "an insurer must demonstrate that it has been substantially prejudiced by an insured's breach of the contractual duty to cooperate in the investigation of a claim, when the insurer is asserting such breach as a defense to an action on the policy." *Brizuela v. CalFarm Ins. Co*, 10 Cal.Rptr.3d 661, 670 (Cal. App. 4th 2004) (citing *Campbell v. Allstate Ins. Co.*, 32 Cal.Rptr. 827 (Cal. 1963)).

Here, Plaintiff shared a claims file, not designated as confidential or containing confidential information, with a retained expert in this bad faith case long after the investigation into the underlying motorcycle accident concluded and a jury had returned an award to Parks—a third party—who was injured in that accident. ECF No. 91 at 5 (Defendants represent that the jury awarded Parks in excess of $8 million on April 7, 2022; the claims file was not provided to Plaintiff until October 31, 2022). While Defendants states this was a "brazen act of collusion," they don't offer anything that demonstrates substantial prejudice when defending the underlying claim or, for that matter, in fulfilling their duties under the policy.

The Court does not suggest the disclosure of the privileged communications to which Defendants point was appropriate; however, Defendants could have marked these documents as confidential once the Stipulated Protective Order was entered, sought disqualification of Plaintiff's rebuttal expert (who represented Parks in the state case), sought claw-back of privileged documents, requested sealing of the state court motion, or even filed a bar complaint. Defendants appear to have

done none of these things. Instead, Defendants filed the instant Motion asserting a "brazen act" by Plaintiff without demonstrating Plaintiff knew attorney client privileged information was contained within the claims file or that Plaintiff's disclosure of that information was purposeful or intended to interfere with the insurer's defense in the state case.

Nevertheless, Defendants also contend Plaintiff engaged in collusion. Collusion is defined as "[a]n agreement to defraud another or to obtain something forbidden by law." *In re Tiffany*, BAP Nos. NC-06-1256-SKuB, NC-06-1287-SKuB, 2007 WL 7541013, at *11 (9th Cir. Aug. 24, 2007) (quoting *Black's Law Dictionary* 259 (7th ed.1999)). A nationwide search of collusion allegations in support of an insurer's claim that its insured breached the cooperation clause of a policy led the Court to *Forest City Grant Liberty Associates v. Genro II, Inc.*, 652 A.2d 948, 951 (Sup. Ct. Pa. 1995), in which that trial court stated:

> The purpose of a cooperation clause in an insurance contract is to protect the insurer's interest and to prevent collusion between the insured and the injured party. 8 *Appleman, Insurance Law and Practice* § 4741. Although a breach of a duty to cooperate will relieve the insurer from liability under the policy, a failure to cooperate must be substantial and will only serve as a defense where the insurer has suffered prejudice because of the breach. *Id.* § 4773.

(Case law citation omitted.). This standard was also noted by a state court in Wisconsin and discussed by Ohio's Court of Appeals. *Dietz v. Hardware Dealers Mut. Fire Ins. Co.*, 276 N.W. 2d 808, 811-12 (Wisc. 1979); *Valley Paint v. Natl. Union Fire Inc. Co.*, Case No. CA2010-08-060, 2011 WL 947036, at *3 (Ohio Ct. of Appeals, Mar. 21, 2011).[6] Importantly, a case out of Los Angeles County stated: "[c]ollusion constitutes an affirmative defense that may be asserted by the insurer … [and c]ollusion in the procurement of a judgment constitutes breach of the cooperation clause …." *Rio Vista Associates v. Hartford Cas. Ins. Co*, Case No. BC 257264, 2005 WL 408007, at *18 (L.A. Sup. Ct., Mar. 1, 2005), (internal citation omitted). That court defined collusion as a "secret agreement" for "one party to bring an action against the other for some evil purpose, as to defraud a third party of his rights" or "secret arrangement … to make use of the forms and proceedings of law … to obtain that which justice would not give them" or "a secret … concert of

---

[6] These cases are in addition to the cases cited by Defendants at ECF No. 91 at 16.

1  action … for fraudulent or deceitful purpose." *Id*. (citations omitted).  Finally, the court stated that
2  "[a] finding concerning collusion depends upon the facts of each case." *Id*. (citations omitted).

3        The above case law supports the finding that collusion, when sufficiently pleaded, is a
4  cognizable basis upon which Defendants' proposed affirmative defense of non-cooperation may rest.
5  Defendants' Motion states: "the collusion at issue has included disclosing privileged defense
6  communications to Ms. Parks' counsel during the course of the suit and actively assisting Ms. Parks
7  and her counsel in the prosecution of the suit."  ECF No. 91 at 17.  In the proposed amended answers,
8  Defendants allege "Chowning has breached each the forgoing contractual duties set forth above in
9  paragraph 89 by colluding with Deeana Parks to assist her in the maintenance of the suit that she
10 filed against him rather than assisting Depositors' in the defense of that suit.  That collusion has
11 included disclosing privileged defense communications to Ms. Parks' counsel during the course of
12 the suit and actively assisting Ms. Parks and her counsel in the prosecution of the suit."[7]  ECF No.
13 91 at 17; *see also*, ECF No. 91-12 ¶ 91, repeated by each Defendants in each proposed amended
14 answer.

15       Based on the above case law, the Court finds the affirmative defense Defendants seek to add
16 is not futile as a matter of law.  Whether the defense adequately states an effective, that is, whether
17 that defense will be proven, is an entirely different question that is not properly decided on a motion
18 to amend.  *Miller*, 845 F.2d at 214; *Cates*, 2017 WL 11429893 at *2.  Nonetheless, Plaintiff's
19 argument regarding futility fails.  The Court finds it is at least possible for Defendants to assert a set
20 of facts, which could be proved, that would constitute a valid non-cooperation defense.  Thus, the
21 Court considers the remaining standards under excusable neglect and Rule 15(a) as applicable to a
22 motion to amend.

23       e.    <u>Whether Amendment will Result in Prejudice to Plaintiff and Delay the Proceedings</u>.

24       Because prejudice is given the greatest weight when reviewing a motion to amend, and is
25 considered when determining if a moving party has established excusable neglect, the Court

---

[7] Of course, the claims file that contains the attorney client privileged communications was not produced until October 2022, and the jury returned its award in favor of Parks six months earlier in April 2022.  Therefore, as a practical and logical matter, the contents of the claims file could not have been the source of privileged communications disclosed during the state court trial.

considers this issue next. *Eminence Capital, LLC*, 316 F.3d at 1052; *Lemoge*, 587 F.3d at 1192. The Court also considers delay because if amendment is granted, discovery, which is otherwise completed in this case, will need to be reopened causing delay in resolution of this dispute.

In their moving papers, Defendants' lack of prejudice argument is only that Plaintiff will contend he "spent time and money preparing for trial based on the existing issues …." ECF No. 91 at 14-15 (citation omitted). However, Plaintiff does not raise this argument. ECF No. 94 at 22-23. Plaintiff, whose burden it is to show prejudice, argues he "had no way of knowing that Defendants would consider production of the claim[s] file to [his] duly disclosed experts … [would be considered] violative of the cooperation clause in [his] insurance policy," and had "Defendants given the slightest indication … the claims file should not be produced to … [a] duly disclosed expert witness …" it would not have been. *Id.* at 22. Plaintiff argues requiring him to defend against a claim that would not exist had Defendants made clear the claims file could not be produced shows "tremendous prejudice." *Id*. at 22.

Plaintiff cites two cases in support of his position. *Id*. at 23. The first, *Eminence Capital*, 316 F.3d at 1051, says nothing that aligns with Plaintiff's argument. Rather, this case and the citation thereto summarize the trial court's decision and the elements considered when a court is presented with a motion to amend. In the second cited case, *Owens v. Kaiser Foundation Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001), the Ninth Circuit found an amended complaint was not prejudicial because "the amendment caused no delay in the proceedings and required no additional discovery." Plaintiff offers no argument regarding discovery or a delay in proceedings. ECF No. 94 at 22-23. Instead, Plaintiff moves from prejudice into a discussion of bad faith. *Id*. at 23. Nonetheless, the Court notes "[p]rejudice requires greater harm than simply that relief would delay resolution of the case." *Lemoge*, 587 F.3d at 1196. Thus, while the Court is loath to further delay resolution of this dispute, in the absence of any cogent argument by Plaintiff the Court finds consideration of prejudice and any delay are not bases upon which the Motion to Amend can be denied.

   f. <u>Bad Faith</u>

Plaintiff argues "Defendants have been attempting to manufacture" a failure to cooperate "defense for months" as shown by serving requests for admissions in September 2022. The RFAs

at issue asked Plaintiff to admit that counsel requested Plaintiff to attend every day of trial in the state court action brought by Parks, and Plaintiff chose not to be there. ECF No. 94 at 21 *citing id*. at 23. Plaintiff says these requests demonstrate Defendants believed he has been uncooperative "since the state court trial took place in March 2022." *Id*. at 21. Plaintiff further submits that when Defendants' assertion that his lack of cooperation started with the state court trial is coupled with Defendants' failure to inform Plaintiff he could not disclose the claims file to his expert, there is "strong" evidence "that the request to amend the Answer … to allege non-cooperation is … made in bad faith." *Id*.

Throughout his Response to the Motion to Amend Plaintiff references a conversation his attorney had with defense counsel in which defense counsel recommended Plaintiff's counsel speak with Parks' state court counsel. *See*, for example, ECF No. 94 at 2, 23. It appears that during a discovery conference discussing Plaintiff's objections to interrogatories seeking information about how Parks' counsel came into possession of documents produced by Defendants in this case, Defense counsel told Plaintiff's counsel he could not refuse to answer based on a speculation objection. ECF No. 97 at 9. Defense counsel suggested Plaintiff's counsel gather responsive information by contacting Park's counsel. *Id*. Plaintiff's counsel responded by expressing concern about "allegations of impropriety." *Id*. Defense counsel told Plaintiff's counsel "simply communicating" with Parks counsel "to obtain information was not improper." *Id*. This exchange, Plaintiff contends, demonstrates Defendants' inconsistency with their current position that Plaintiff's counsel colluded with Parks' counsel throughout this litigation. Plaintiff submits this is further evidence of Defendants manufacturing a non-cooperation defense in bad faith. ECF No. 94 at 23.

"In the context of a motion for leave to amend, bad faith means acting with intent to deceive, harass, mislead, delay, or disrupt." *Wizards of the Coast LLC v. Cryptozoic Entertainment LLC*, 309 F.R.D. 645, 651 (W.D. Was. 2015) *citing Leon v. IDX Sys. Corp.*, 464 F.3d 951, 961 (9th Cir. 2006); *In re Ezzell*, 438 B.R. 108, 117-18 (Bkrtcy. S.D. Tex. 2010). "As it has been defined in other contexts, 'bad faith' means more than acting with bad judgment or negligence, but 'rather it implies the conscious doing of a wrong because of dishonest purpose or moral obliquity.... [I]t contemplates a state of mind affirmatively operating with furtive design or ill will.'" *Id*. *quoting United States v.*

1 *Manchester Farming P'ship*, 315 F.3d 1176, 1185 (9th Cir. 2003).  In *Boyd v. Wolchok*, Case No. 22-cv-00716-APG-VCF, 2022 WL 4483165, at *1 (D. Nev. Sept. 27, 2022), the Court explained there is a split among the courts whether a preponderance or clear and convincing evidence is required to demonstrate bad faith when considering a motion to amend.  As was true in *Boyd*, the Court finds it makes no difference which standard applies here because Plaintiff has not established Defendants are acting in bad faith even under a preponderance standard.

Defendants may have been negligent in failing to designate the claims file as confidential or advise that certain documents could not be disclosed because they were protected by the attorney client privilege.  Defendants may also have been negligent or used bad judgment by not seeking to claw back attorney client communications that were disclosed without their permission, and or striking portions of rebuttal expert report relying on the same.  And, Defendants may be unable to prove collusion given the timing of the claims file disclosure (which was after the jury returned a verdict in the state court action) and that Defendants had no issue with Plaintiff gathering information from Parks' counsel (who serves as Plaintiff's rebuttal expert).  But these facts do not evidence "conscious doing of a wrong because of dishonest purpose or moral obliquity."  It may be that Plaintiff can develop evidence of conscious wrongdoing, or that Plaintiff will readily overcome the failure to cooperate defense, but the Court finds, after weighing all that is before it, Plaintiff has not carried his burden of demonstrating bad faith.

### III.   Order

Accordingly, IT IS HEREBY ORDERED that Defendants' Motion for Leave to Amend Their Answers  (ECF No. 91) is GRANTED.

IT IS FURTHER ORDERED that Plaintiff's Motion for Leave to Supplement (ECF No. 106) is DENIED as moot.

Dated this 4th day of November, 2025.

_____
ELAYNA J. YOUCHAH
UNITED STATES MAGISTRATE JUDGE

15